## Merritt, Jr. v. Cravens.

(Decided January 27, 1916.)

## Appeal from Christian Circuit Court.

1. New Trial—Pleading—Mistake.—When, by oversight in the draftsman of a pleading, it is made to state that the acts constituting the cause of action occurred in a different year from their actual occurrence, and this is a plain mistake and known to be such by the adverse party before going into trial, there is created no such fatal variance between the pleading and the proof as will justify the granting of a new trial or a reversal if that should be overruled.

2. Limitation of Actions—Plea of Personal.—The plea of the Statute of Limitations is not intended to be a defense to the merits, but it is only a plea of repose by denying the remedies afforded by the courts after the statutory period has expired, and the plea is a personal one and cannot be raised by a demurrer, but if relied upon, must be pleaded.

3. Witnesses—Competency of Divorced Wife to Testify Against Husband.—A divorced wife is a competent witness either for or against her husband in the trial of cases for alienation of affections, or for criminal conversation, provided her testimony is not concerning any communication made between them during marriage, nor concerning any fact that she may have obtained by virtue of the marriage relation.

4. Husband and Wife—Alienation of Affections.—In actions for alienation of affections, it is not essential to a recovery that unlawful intercourse be proven, but this fact may be introduced in aggravation of damages, and in such cases if the proof fails to establish the alienation of affections of the plaintiff's spouse, but only shows acts of adultery between the spouse and the defendant, the jury should not be instructed under the action for alienation of affections, but should be instructed so as to submit the claim under an action for criminal conversation, if the pleadings are broad enough to cover this remedy.

5. Husband and Wife—Criminal Conversation.—The action for criminal conversation is different from the one for alienation of affections, in that in order to sustain the former, there must be

proof of unlawful intercourse, and when this is shown, alienation
of affections may also be proven in aggravation of damages.

6.  Husband and Wife—Alienation of Affections.—Actions for the
alienation of affections and for criminal conversation belong to
the same genus, and when they each affect all the parties to the
action, they may be united in one petition, under section 83 of
the Civil Code.

C. H. BUSH and HAZELRIGG & HAZELRIGG for appellant.

TRIMBLE & BELL, SMITH & SLAUGHTER and J. C. DUFFY
for appellee.

Opinion of the Court by Judge Thomas—Reversing.

In February, 1900, the appellee, B. P. Cravens and
his wife, Bertha Cravens, were married. They lived
together as husband and wife until the 23rd day of De-
cember, 1913, when, for the reasons hereinafter stated,
the appellee claims to have left his wife, and within a
few days thereafter filed suit against her for divorce in
the circuit court of Christian county, and on February
22, 1914, a judgment granting him an absolute divorce
from his wife was rendered by that court. About the
time of the filing of the divorce suit, appellee filed this
suit against appellant, Geo. H. Merritt, Jr., seeking to
recover from the defendant the sum of $25,000 as dam-
ages, because, as he claimed, the appellant had alienated
the affections of his wife.

During the marriage there was born to appellee and
his wife six children, five of whom are living, the oldest
being thirteen years of age and the youngest three years
of age, or rather this was their ages at the time of the
trial of this case.

The appellee seems to have been somewhat of a rov-
ing character and had been living in Hopkinsville, Chris-
tian county, Kentucky, the last time for something like
three or four years just previous to the filing of this
suit. His avocation seems to have been that of a car-
penter around a coal mine and he sometimes worked as
a section hand on the railroad. For some considerable
time previous to March 3, 1913, the appellee had been
occupying as tenant a house belonging to the appellant,
which was used by himself and family as a residence.
His health had become greatly impaired, and on account
of his resulting physical decline, his mind became more
or less impaired, and on the last date mentioned he was

adjudged to be a person of unsound mind and was placed as an inmate in the Western Kentucky Lunatic Asylum located at Hopkinsville, where he remained until July 6, following that date. On this day he returned to his home and resumed his position as a member of the family and as the head thereof, which position he continued to occupy until he separated from his wife.

Upon the trial of the case there was a verdict and judgment in favor of the appellee for the sum of $6,000 against appellant and, complaining of that judgment, he prosecutes this appeal. At the time of the trial of the case, the divorce hereinbefore mentioned had been granted, and on behalf of the appellee his divorced wife was permitted to testify over the objections and exceptions of appellant. There was a demurrer to the petition, which was overruled, and exceptions taken. Several grounds for a new trial were relied upon, but the chief ones urged before us are: (1) Error of the court in overruling the demurrer to the petition; (2) error of the court in permitting the wife of appellee to testify upon the trial, and (3) error of the court in improperly instructing the jury and in refusing instructions offered by appellant.

Considering these grounds in the order mentioned, we may state that the objection taken to the petition by the demurrer is, that it shows on its face that the cause of action is barred by the statute of limitations. This comes about from the evident fact that there was a typographical error made in drafting the petition so that it was made to state that the acts complained of occurred in the year 1910 instead of in the year 1913. It is insisted that this character of action must be brought within one year from the time it accrued, as is provided by section 2516 of the Kentucky Statutes, and it is urged that as the petition showed on its face that more than one year had expired from the committing of the acts by appellant, of which complaint is made in the petition, that the demurrer should have been sustained. There is some authority for this position, but a much greater number of cases from this court, as well as the more recent ones, hold that the statute of limitations is a personal plea, which can, not only be waived by the defendant by a failure to plead it, but that before suit in many character of cases, the statutory bar may be prolonged by some act of the party to be charged; and it is familiar

law that a cause of action which had already become barred may furnish a valid consideration for a new promise. These rules with reference to the statute of limitations would seem to indicate that the law views the right of a party to rely upon the statute, not for the purpose of prohibiting a recovery because of any special regard for the rights of the party, but rather for the purpose of encouraging a rule of repose by which parties may have their causes tried and investigated at a time when the testimony, either by witnesses or otherwise, may be available, and before the witnesses should die or the evidence should otherwise become unobtainable.

Of the cases holding that the statute should be relied upon by answer, we append the following from this court: Chiles v. Drake, 2 Met., 146; Rankin v. Turney, 2 Bush, 555; Board v. Jolly, 5 Bush, 86; Stillwell v. Leavy, 1 S. W., 590, 84 Ky., 399; Mullins, et al. v. Mullins, 120 Ky., 643, 87 S. W., 764; Swineboard v. Wood, 123 Ky., 664; Yeager v. Bank of Ky., 125 Ky., 183; Brasher's Heirs, et al. v. Brasher, 144 Ky., 451; Baker, et al. v. Begley, 155 Ky., 234; Hackett v. State Bank & Trust Co., 155 Ky., 392; Davie, Exr. v. City of Louisville, 159 Ky., 252; City of Louisville v. O'Donaghue, 157 Ky., 243.

As stated, the law has no cherished desire to force the barring of an action by the statute, and if the defendant does not see proper to rely upon it, it is no concern of the law, and it is equally disinterested as to whether the plaintiff succeeds upon a cause of action that is barred, or one that is not barred; leaving the matter entirely with the party to be benefited by the statute. The statute is no bar to the merits, but is only a privilege extended to a litigant whereby he may, if he chooses, close the door of the court on his tardy adversary. We are, therefore, of the opinion that the better practice is that those who seek to take advantage of the statute must plead it.

But if we were mistaken in this, still the error relied upon by the appellant could not avail him in this case because the undisputed facts show the cause of action, if any, which the appellee has, arose from acts committed in 1913, within less than a year next before the filing of the suit. It furthermore appears that long before the trial of this case the appellant gave his deposition concerning the matter and he was fully apprised of the

year in which the action was laid, and at the time of the trial was not in the least surprised when it was shown by the testimony that the acts with which he was charged occurred in 1913.

Section 129 of the Civil Code of Practice is as follows:

"129. Variance When Material—Amendment.—No variance between pleadings and proof is material, which does not mislead a party, to his prejudice, in maintaining his action or defense upon the merits. A party who claims to have been so mislead must show that fact to the satisfaction of the court; and, thereupon, the court may order the pleading to be amended, upon such terms as may be just."

The purpose of the enactment of this section was to meet just such conditions as those with which we are now dealing. Manifestly, the variance between the date as alleged and as proven could have no possible effect upon the case unless one of them would establish a bar to the cause of action. For illustrations suppose the limitation in this action was five years, and the allegation had been, as it is, that the acts occurred in 1910, when the proof showed that they occurred in 1913. This would produce no fatal variance unless the complaining party could show that he was in some manner mislead by reason of the variance to his prejudice. It is not pretended in this case that the appellant was in any manner mislead, or that the typographical error in the writing of the year in the petition in any manner prejudiced his substantial rights. We, therefore, conclude that the variance was not material and that it furnishes no ground of complaint by appellant. Gains v. Deposit Bank, 19 Ky. L. R., 171; I. C. Ry. Co. v. Smith, 133 Ky., 732; Central Coal Co. v. Thompson, 31 Ky. L. R., 276; Continental Coal Co. v. Hunt, 28 Ky. L. R., 1010.

Before considering the second objection above to the judgment, it might be proper to notice another point made by appellant, which is, that after the returning of the verdict, he entered a motion in arrest of judgment which was overruled. Strictly speaking, this motion is a part only of the criminal practice, but considering it as a motion for a judgment *non obstante veridicto,* the observations which we have made with reference to the supposed variance between the allegations and the proof, will apply here, and for the reason stated there was no error in failing to sustain that motion.

Serious complaint is made of the action of the court in permitting the divorced wife of the appellee to testify, as it is claimed that this violates the provision of 606 of the Civil Code, but numerous decisions from this court do not support this contention. The case of Hostetter v. Green, 156 Ky., 611, was brought to recover damages for alienation of affections. There were two trials of the case, and before the last trial the wife of the appellee obtained a divorce from him and at that trial the appellants therein offered to introduce the divorced wife as a witness in their behalf, to prove a fact which was not concerning any communication between herself and husband during marriage, and information which came to her, not in consequence of, or by reason of the existence of the marriage relation; but the court declined to permit her to answer. This court in determining the action of the lower court in refusing this testimony, to be erroneous, in the course of the opinion, said:

"Before the last trial of this case a divorce had been granted to the wife of the appellee, and she was offered as a witness for the appellants, and the lower court declined to permit her to testify, and they are complaining of that action.

"Section 606 of the Civil Code provides among other things:

" 'Neither a husband nor his wife shall testify while the marriage exists or afterwards concerning any communication between them during marriage. Nor shall either of them testify against the other.'

"It was avowed the witness, if permitted to answer, would state that in December, 1909, in her presence, the appellant, J. P. Hostetter, stated to the appellee, Green, that he (Hostetter) and his family were going to move from Franklin county to Fayette county, and that Green might take his (Hostetter's) farm, rent free, and live there with his wife, and that Green declined said proposition, and left the place and never returned.

"It is apparent from the express wording of the section of the Code quoted that neither the husband nor the wife is a competent witness to testify against the other during the existence of the marriage relation; but in this case it was sought, so far as that part of the avowal above referred to is concerned, to show by the divorced wife the conversation had between her father

and her then husband which was in no sense a communication between her and her husband growing out of the marital relation. She heard the conversation between her father and Green just as any other witness might have heard it if present, and we are aware of no reason of public policy which denies to a litigant the right to introduce the evidence of his divorced wife against the husband, although the occurrence took place during their marriage, if it did not grow out of and she did not acquire the knowledge through or by reason of the marital relation. The evidence offered was in no sense a communication from the husband to his wife, and had no connection whatever with the marital relations between them; it was a transaction between her husband and another which only happened to take place in her presence.

"The case of Commonwealth v. Sapp, 90 Ky., 580, was where the Commonwealth offered to introduce the divorced wife as a witness against Sapp who had been indicted, charged with attempting to poison her, and the court in discussing her competency as a witness, said:

" 'If the proposed testimony violates marital confidence in the slightest degree, or tends, however slightly, to impair the rule for its protection, the highest consideration forbids its consideration. The words 'communication,' therefore, as used in our statutes, should be given a liberal construction. It should not be confined to a mere statement by the husband to the wife or vice versa, but should be construed to embrace all knowledge upon the part of the one or the other obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have been known to the party. The reason of this rule does not apply, however to facts known to a surviving or divorced husband or wife, independent of the existence of the former marriage, although the knowledge was derived during its existence, and relates to the transactions of the one or the other; therefore, the rule should not be applied in such a case. What the State proposed to prove by the divorced wife in this case was not any communication or knowledge which can fairly be considered as having come to her by reason of her being then the wife of the accused.'

"The case of Elswick v. Commonwealth, 13 Bush, 155, was where a defendant charged with grand larceny

·offered to introduce his divorced wife as a witness, and the trial court refused to permit it. In reversing that judgment for that reason the court said:

" 'Information coming to a husband or a wife in consequence or by reason of the existence of the marriage relation is to be treated as confidential, and the confidence which the law creates while the parties remain in the most intimate of all relations cannot be broken even after that relation has been dissolved.

" 'But the reason for this rule does not apply to facts known to a surviving or a divorced husband or wife independent of the previous existence of the marriage. Accordingly in an action by a husband for a criminal conversation with a wife from whom he had subsequently been divorced she was held to be a competent witness to prove the charge laid in the husband's declaration.' "

It is manifest from this opinion, together with the authorities from this court therein referred to, that the evidence of a divorced wife in cases like this, if it does not concern any communication between herself and husband during marriage, or which she obtained by virtue of the marital relation, is not forbidden by the section of the Civil Code, *supra*. It results, therefore, that inasmuch as her testimony in this case was not of the forbidden class, the court committed no error in permitting her to testify.

Having disposed of these preliminary questions, we come now to the merits of the case.

The only testimony looking to the establishment of the plaintiff's claim made in the petition, is that given by his divorced wife. The substance of her testimony is that appellant came to her house for the first time on the 8th day of April, 1913, for the purpose of collecting some rent and that she paid him at that time something like $12, the house being rented for $8 per month; that about the 28th day of April, he again called at the house for the purpose of collecting rent and at that time she paid him $5. That for a few days after that appellant appeared around and about the house, but upon these occasions he was superintending some repair work about the premises, principally the yard fence. She says that the next time that appellant called at the house was on May 6th, following, at about eight o'clock at night, and that he stated on that occasion that the purpose of his trip was to collect more rent, but that she informed

him that she had no money and could pay no rent. She testified as to what then occurred as follows: "Q. What did he say about the conditions? A. He asked me if I had the rent and I told him no, sir, I didn't have it, and really he ought to come down on the rent some, that I thought eight dollars was too much for me to pay, and he told me he couldn't do it; if he came down on the rent with me the rest of them would expect it, too. He sat there, and he asked for a drink of water and I got that, and then Mr. Merritt sat down in the chair and took me in his lap and told me if I would do them things the house rent shouldn't cost me anything, and I told him I couldn't do it, but he kept on and told me they would soon get tired of helping me, and all these things, and finally led me into it. Q. That was the 6th of May? A. Yes, sir. Q. Did you go to bed with him that night? A. No, sir. Q. Where did you have intercourse with him? A. Right in the hall, in the dining room. Q. Did he tell you anything about taking care of you? A. He told me I shouldn't suffer. Q. If you would let him do what he wanted to? A. Yes, sir. Q. Did you do that? A. Yes, sir. Q. Did he say anything else about taking care of you? A. No, sir, not then." Continuing she states that the appellant visited her at her house on the following dates: May 8, 13, 20, 27 and on June 3, 18, 20 and 24. That upon each of these occasions he had intercourse with her in the house and in her bedroom and not at the place of the first adulterous act, and that she conceived and became pregnant on the night of May 13. Two of the children of the appellee being thirteen and eleven years of age, each testified in substance that upon one occasion, about dark, appellant came to the house, but the witnesses had retired for the night but had not gone to sleep. They heard him ask their mother for rent, but did not hear any other conversation and soon went to sleep. Aside from their testimony, that of the divorced wife is the only testimony establishing the unlawful intercourse in any manner whatever. After appellee returned home from the asylum on July 6, 1913, and according to his testimony, he cohabited with his wife and had intercourse with her from time to time up to the day of his separation. He nowhere testified that he ever discovered that his wife was pregnant, and according to the testimony in the record, the only way that he ever learned of this was because his wife sent for an attorney

to come to the house, before whom, and in the presence of her husband, she admitted, for the first time, the unlawful intimacy which she claims had occurred between her and the appellant.

In that same conversation, before the attorney and in the presence of her husband, she stated that her pregnancy was the result of such intimacy, and that the appellant was the father of her unborn child. Upon receiving this information, the appellee, according to his testimony, repaired to the house of a brother-in-law, but he continued to visit the house of his wife, in whose custody he had left the children, and according to the testimony he continued to furnish clothing and other provisions necessary for the family. In fact, the neighbors not only saw him at various times of the day and sometimes at night going into and out of the premises, but likewise at work in the performance of chores around and about there as he had formally done and some of them did not know that a separation had taken place.

It will be noticed that the divorce suit was filed about the same time that this suit was filed and there was no effort made by the appellee to possess himself of the five infant children, or to molest in the least the wife's possession of them. In fact, the judgment in the divorce suit, which is in the record, makes no mention whatever as to who shall have the custody of the children. We mention these facts only as bearing upon his claim of loss of the affections of his wife. Upon the question as to the deportment of his wife toward him after his return from the asylum and the way in which she treated him after his return, he testified as follows: "State whether or not you noticed any difference in your wife's appearance after your return? A. I couldn't say. She was about the same before I was carried away, just as affectionate as she had been all my life. Always had been affectionate and true to me, and honest, and I never doubted her. Q. Did you see any difference in her appearance? A. Not a bit. Q. How long before you noticed any difference in her appearance? A. Never noticed any until I found this out. Q. When was that? A. December 23rd. Q. Did you find out that your wife was pregnant by another man? A. Not till I was told so by her. If that is competent." And upon cross-examination he said: "Q. You say that her treatment of you was just as kind and affectionate as it had ever been?

A. It was. Q. And remained that way so long as you lived with her, didn't it? A. Yes, sir. Q. There was never any change in her treatment and in her conduct towards you as long as you lived with her after you came home from the asylum, was there? A. There was not. Q. And she treated you just as a good wife should do clear up until you left her, is that a fact? A. Yes, sir. Q. And you left her—she didn't leave you, did she? A. I left her. Q. She never left you? A. No, sir. Q. Never threatened to leave you? A. No, sir. Q. Ministered to you and treated you just like she had always done? A. Yes, sir."

The wife testifies that because of the unlawful relations existing between her and the appellant, he had won her affections, but her acts in every way refute this statement.

There is nothing in the record to show that appellant exercised any blandishments, or persuasions, or any seductive influences to cause the wife to surrender to him more than as hereinbefore stated. He did not beguile her in any way, or use any means to allure or attract her towards him, but if guilty at all, it was because of a plain surrender by the wife in consideration of some financial favors, which do not seem to have been insisted on, because the record shows that although importuned to do so, the appellant paid her no money. There is evidence, however, to show that after the return of appellee from the asylum, he was given a receipt by appellant for the rent up to perhaps July 1, which was something more than the amount that had been paid to him.

The court instructed the jury solely upon the theory that this was a suit purely for alienating of affections, and the question is, under the condition of the record should this have been done?

The law affords two separate and distinct remedies by which either spouse may recover damages which they might suffer by reason of the wrongful invasion of any of the marital rights. These are: A suit for alienation of affections; and a suit for criminal conversation. They are quite separate and distinct, and the facts which will support the former will not support the latter. The existence of these two distinct causes of actions is recognized by all of the text writers, as well as courts of last resort. (A. & E. Cyc. of Law, Vol. 8, page 260;

Idem, Vol. 15, page 862; Cooley on Torts, Vol. 1, page 466; Vol 21 Cyc., pages 1617 and 1623; Kibie v. Rucker, 1 A. K. Marshall, 391; Dietzman v. Mullen, 22 Ky. L. R., 298; Scott v. O'Brien, 129 Ky., 1.) The same distinction is recognized by Blackstone in his Commentaries on the Law of England, and all recognized authorities.

In a suit to recover for alienation of affections all the authorities agree that it is essential for the plaintiff to show that the defendant produced and brought about the alienation of the affections of the wife, if the suit is brought by the husband, or the alienation of the affections of the husband if the suit is brought by the wife. In this character of action it is permissible to prove, not for the purpose of establishing the cause of action, but in aggravation of damages, sexual intercourse, although such conduct is not an essential ingredient to enable the plaintiff to recover. On the contrary, in a suit for criminal conversation, the exact reverse is true. The action will fail without the proof of seduction and it is not necessary to maintain the action that there be any proof of alienation of affections.

The authorities to which we have been referred and which we have been able to find, clearly indicate to our minds that where the proof shows only adultery committed by the defendant with the spouse of the plaintiff, the action is properly one for criminal conversation and should be practiced, as well as submitted to the jury upon this theory alone; and it would be error to submit to the jury as a ground of recovery, facts necessary to recover in an action for alienating of affections. Supporting the position which we have indicated that proof only of adultery or seduction is not sufficient to maintain a cause of action for alienating of affections, we append the following: "Mere proof of abandonment and that the husband maintains improper relation with the defendant is not sufficient." (Buchannon v. Foster, 23 N. Y. App. Div., 542, 48 N. Y. Suppl., 732; Churchill v. Lewis, 17 Abb. N. Cas. (N. Y.), 226, and see Hodecker v. Stricker, 39 N. Y. Suppl., 515; Warner v. Miller, 17 Abb., N. Vas. (N. Y.), 221.

In Bigaouette v. Paulet, 134 Mass., 123, the court in the following clause of its opinion, recognizing this doctrine, says:

"The loss of consortium is presumed, although the wife may have herself been the seducer, or may not

have been living with the husband. A husband who is living apart from his wife, if he has not renounced his marital rights, can maintain the action, and it is not necessary for him to prove alienation of the wife's affections, or actual loss of her society or assistance * * * The essential injury to the husband consists in the defilement of the marriage bed—in the invasion of his exclusive right to marital intercourse to his wife, and to beget his own children.''

Following these authorities this court said in the case of Scott v. O'Brien, *supra*:

''To support an action for alienating a husband's or wife's affections, it must be established that the defendant is the enticer. Mere proof of abandonment, and that the husband or wife maintains improper relations with the defendant is not sufficient.''

We have concluded then that the court should not have given to the jury instructions 1 and 2, as they base the right of the plaintiff to a recovery upon the idea that the proof established a suit for the alienation of affections, when, as we have found, the proof for plaintiff established a cause of action in his favor for criminal conversation.

Under the instructions and the proof the jury might have believed that the appellant had not had intercourse with the wife of appellee, yet they were authorized to return a verdict in favor of the latter; or they may have believed that appellant was guilty of adultery but that the affections of the wife had not been alienated. As the instructions permitted the jury to return the verdict under either of the causes of action, when, according to our view, only one of them was proven, necessarily this was prejudicial error.

It must not be forgotten that the suit for alienation of affections is not one for the alienations of the plaintiff's affections, but is one to recover for the alienation of the affections of the plaintiff's spouse. The proof herein as we have seen might establish the former, and indeed the criminal intercourse may have been sufficient to have done this, but it is not a ground of recovery against the appellant.

It may be insisted that the jury were authorized, even if the instructions had limited the trial of the case to one for criminal conversation only, to return the verdict which it did, but even if this be conceded, it is not the

question being considered. A party to a suit has the right to either prosecute it or to have it prosecuted against him under the form of action given by the law for such cases, and to have the proven case, or defense, submitted to the jury, and it will not do to speculate or to say that the verdict might have been the same.

These two causes of action belong to the same genus, and as they "may be prosecuted by the same kind of action" in that they each partake of the nature of trespass on the case, and each sound in tort, and "affect all the parties to the action," they may be joined under section 83 of the Civil Code of Practice; and we are of the opinion that the allegations of the petition are sufficient to constitute a cause of action under either remedy. If the evidence upon another trial should be substantially the same as upon this trial, the court should instruct the jury in substance, that if they should believe from the evidence that the defendant seduced and had intercourse with plaintiff's wife, they should find for plaintiff and assess his damages in such a sum as would compensate him for the loss of the comfort and society of his wife, and for mental pain and anguish, and humiliation, if any, which he suffered by reason of the adulterous acts of the defendant, and for the disgrace and shame, if any, which the plaintiff may have suffered on account thereof, not to exceed in all the sum of $25,000, the amount sued for, and unless the jury so believe from the evidence they should find for the appellant.

If the evidence upon another trial should develop sufficient proof of the alienation of the wife's affections to justify the submission of this question to the jury, it should be submitted as a proper element of damages.

Judgment reversed with directions to proceed in accordance with the opinion.