## Todd v. Fox.

(Decided May 14, 1935.)

RODNEY HAGGARD for appellant.

J. M. BENTON, HARVEY T. LISLE and S. T. DAVIS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Asserting in his petition that he and his wife, after their marriage in 1911, lived happily until January 5, 1934, and previous to, and on, the latter date, Milt B. Fox had made "frequent visits" to his home, "for the purpose of misrepresenting" him to his wife, and on "numerous and divers occasions" and sundry places by acts of "flattery, misrepresentation, persuasion, advice and other inducements" poisoned his wife's mind against him; destroyed his home and happiness, and thereby he had lost his wife, her comfort, assistance, affections, and companionship, and "suffered mental pain, anguish and embarrassment," E. J. Todd, prayed for a recovery of $50,000.

Fox traversed the allegations of the petition, and charged that if Todd had lost. "the love and affection of his wife, it was due to his philandering and own misconduct and former illicit relations with other women."

The issue was completed by a reply controverting the answer.

On the trial to a jury, Todd testified, respecting the acts and conduct of Fox, indicative, in his opinion, of the latter's intentional alienation of his wife's affections. The acts, conduct, and statements of Fox to which Todd testified to substantiate his cause of action are so meager, it is scarcely possible to assemble them. He claims he found at his home in his wife's hand bag a piece of paper on which was written the words: "Others may have company, but you have my heart." He declares it was in Fox's handwriting; that he and Fox had gone to school together, up to the age of seventeen, and in this way he had acquired knowledge of the handwriting. It had been about twenty-eight years since they quit school. The next item of potent evidence upon which he relies is that he went home on the night of January 5, 1934 and found his wife away; he went to the front door, ran in, calling her; she did not answer. He observed a car in an alley behind his home, went to it and found Fox, and asked: "Who have you got in the car with you?" He did not answer. For the sake of accuracy, we here give his language:

"I stepped on the running board, and he stepped on the starter, and, of course, by the time we got to the top of the hill in the alley the car must have been making 30 miles an hour, and he hit a truck —they had been working on the alley there, one of

the trucks had been hauling rock or dirt—the front side of the car, right side of the car, hit the truck and threw me off and I fell off. I got up and started back to the car. At that time he got out of the car and went to the front, he got out and went to the front end of the car. I had a right smart piece to walk before I got around the car, when I got around, I faced him, and he just stepped back and put his hand on his hip. I said, 'You don't have to do that.' He said, 'You still don't know who is in the car.' I said, 'I will find out.' I stepped up on the car and lit a match right in her face.''

He described other actions of his wife and of Fox, which he esteemed as evidence they were consorting for an immoral purpose.

On cross-examination he admitted that in 1929 he had been sued by a husband for alienating his wife's affections. He admitted criminal intimacy with the man's wife, for which an action was filed against him, which he had compromised for $1,000 and did so without the knowledge of his counsel. He admitted his wife knew of the suit and that she was not in a good humor about it. He confessed that his health was not good in the fall of 1929 and that he received treatment at the hands of Dr. Johnson, Dr. Bush, and Dr. Price, and that his ailment was venereal.

Before his marriage, his wife and Fox were sweethearts. He admitted, because Fox had been a boy "sweetheart" of his wife in her youth, that on this account his feelings toward Fox "never was bad, kinda under the skin, wasn't any outside appearance particularly of antagonism between us." Other witnesses testified in his behalf, but no one of them described any acts or conduct or repeated any statement of Fox tending to establish his cause of action. At the conclusion of his evidence, the court directed a verdict for Fox.

The evidence, when considered in the light of the familiar principles controlling such action, abundantly sustains the directed verdict.

The burden of proof was on him to establish that Fox's wrongful acts, conduct, and statements caused the loss of her affections or his and her separation. The mere proof of the loss of her affections, or her abandonment of him, was not sufficient, of itself, to author-

ize the submission of the case. It was his duty to present facts establishing the alienation of the affections of his wife, together with the further fact that it was caused by Fox; that is, that Fox did or said something to her intending thereby to alienate her affections, and that the same did alienate her affections. McGregor v. McGregor (Ky.) 115 S. W. 802; Bergman v. Solomon, 143 Ky. 581, 136 S. W. 1010; Scott v. O'Brien, 129 Ky. 1, 110 S. W. 260, 33 Ky. Law Rep. 450, 16 L. R. A. (N. S.) 742, 130 Am. St. Rep. 419; Jackson v. Cook, 222 Ky. 409, 300 S. W. 853; Merritt v. Cravens, 168 Ky. 155, 181 S. W. 970.

He declared his wife had declined to copulate with him. It is not debatable that his having, or having had, a venereal disease was an adequate excuse therefor. See section 2117, Kentucky Statutes.

Without an affirmative plea, under the general denial, Fox was entitled to show that the alienation was a voluntary act of Todd's wife, or the sequence of Todd's own conduct, or both, and was not due to any wrongful or intentional act of his (Scott v. O'Brien, supra; Slaton v. Milburn, 180 Ky. 655, 203 S. W. 529), for unless the alienation of his wife's affections was produced and brought about by the intentional misconduct of Fox, he was not liable for any damages therefor (Jackson v. Cook, supra).

The episode in the alley, in the rear of his home, unexplained, and which he strongly stresses, alone, is insufficient to establish his cause of action. As to the note which he declares he found in the possession of his wife, it is of but little, if any, value as evidence, for it, also, is without explanation, other than that which it, ex facie, imports. The episode and the note, without some other evidence showing the contrary, are consistent with the innocence of Fox and Todd's wife.

The whole of the evidence to an unbiased mind utterly fails to establish that Fox did anything to his wife, or said to her anything, of or about him, calculated to influence her in the manifestation of her affection for or against him.

Aside from this, the determining from his testimony whether his marital infidelity and illicit venery, resulting in venereal disease, or Fox's alleged misconduct was the superseding cause of the mental attitude of his wife toward him, elicits, and demands the indul-

gence in conjecture, speculation, and surmise, neither of which is sufficient upon which to rest a verdict. It is not permissible for a jury so to arrive at its finding of facts. Wigginton's Adm'r v. Louisville R. Co., 256 Ky. 287, 75 S. W. (2d) 1046. In the circumstances, the court properly directed a verdict for Fox.

The judgment is affirmed.