## Justice v. Justice.

Oct. 29, 1943.

E. J. Picklesimer for appellant.

Sidney Trivett and Abner May for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On December 21, 1935, the appellant, and plaintiff below, W. H. Justice, Jr., married Amy Plymale, who was then 18 years of age, while he was about 57 years of age. He had been a teacher in the public schools of Pike County for nearly 30 years prior to the time of the marriage and continued to teach thereafter. Not long after the marriage they moved to a village in Pike County called Huddy where there was maintained a U. S. postoffice with Amy Justice, appellant's wife, as the duly appointed postmistress. Some of the schools taught by appellant after the couple took up their abode at Huddy were so far from his home that he would return to it only at week-ends, sometimes remaining away as long as two weeks. When his school was near enough to his home he would return each night but be absent throughout the day.

The village of Huddy appears to be located near Tug River separating Kentucky from West Virginia and not far from the city of Williamson, West Virginia, which is situated on that stream. In the home of plaintiff there were then no children to be looked after and Mrs. Justice was free from such home cares. The appellee, and he was a prosperous merchant in the village and about three days after the installation of Mrs. Justice as post-mistress defendant asked her when she was going to town (meaning the city of Williamson) and stated to her that the next time she wished to make the trip he would be glad to take her in his automobile, which he did shortly thereafter. On arrival they went to a room in a boarding house within the city where they engaged in sexual inter-course and which was continued for a period of some-thing like two and a half years thereafter, by making trips to the same city and occupying the same room while therein, and also at other times at the Justice home when plaintiff would be absent therefrom in his school work. In the meantime two children were born to Mrs. Justice, both of whom she stated were begotten by defendant, and she is absolutely sure that the last one was the result of their relations. The infidelity of the wife in the manner we have stated was kept a profound secret from her hus-band, who, in the meantime, had heard some rumors and observed suspicious conduct on the part of his wife, so much so that he approached her concerning the matter when she freely admitted her guilt. Thereupon this ac-tion was filed in the Pike Circuit Court by the husband against defendant on April 15, 1941, in which he alleged the criminal conduct of his wife and the defendant, her paramour, and alleged that by such conduct defendant had alienated the affections of plaintiff's wife toward him, whereby he suffered humiliation, mental agony, etc., and was damaged in the sum of $10,000, for which amount he prayed judgment against defendant. The answer of defendant was a denial of the averments of the petition, thus putting in issue the alleged wrongful acts of defendant, as well as the effect thereof on plaintiff. He also relied on limitations in bar of plaintiff's right to maintain the action, which was denied by reply. About the same time, if not on the same day, plaintiff filed an action in the same court for a divorce which was later granted, but neither action was filed by him until his wife made her confession. At the trial plaintiff testified in his own behalf and he also introduced his divorced

wife and two other witnesses, Floyd and Claud Bostic. Defendant then moved the court for a peremptory instruction in his favor which was sustained, followed·by verdict as directed, and judgment dismissing the petition, to reverse which this appeal is prosecuted.

The judge of the court as a basis for directing the jury to return the verdict for defendant filed a memorandum opinion in which he concluded from the evidence (1) that the limitation of one year for the criminal conversation relied on in the petition had elapsed following the last occasion when the guilty parties had intercourse and the filing of the action (see Carroll's Kentucky Statutes, Section 2516; KRS 413.140), and (2) that the testimony failed to show any alienation of the wife's affections for her husband. There is, therefore, presented to us the two issues of fact which influenced the court in giving the peremptory instruction.

Before determining such issues we deem it proper to say that the distinction between tort actions for ''Criminal Conversation'' and ''Alienation of Affections'' is still attempted to be maintained in the law, but with hazy foundation upon which to rest. Each seek damages for invasions of plaintiff's right of consortium, and -a destruction or impairment of the consequences thereof, and the right of action for each of the wrongs are so near akin that we in the cases of Merritt v. Cravens, 168 Ky. 155, 181 S. W. 970, L. R. A. 1917F, 935, and Gross' Adm'r v. Ledford, 190 Ky. 526, 228 S. W. 24, 14 A. L. R. 689, held that they might be joined in one action. See, also, the text of 27 Am. Jur. 120 and 174, Sections 519 and 570. However, there is no objection of misjoinder of causes of action and we are not called upon to reconsider that question.

Turning now to a consideration of the evidence· touching the two issues of fact, supra, it is disclosed in the testimony of plaintiff's wife that she was certain that her youngest child was begotten by defendant and that it was on the 20th day of March ''1938 or 1939.'' She was then asked: ''Q. Three years ago this March? A. Yes Sir, the 20th.'' She then stated that her youngest child was born on December 15 of the same year, which was the December ''three years'' preceding the time when she was testifying, which was on the 16th day of March, 1942. Three years prior thereto would be March, 1939, and the birth of her second child was December 15, 1939.

She testified that the unlawful relations continued between her and defendant until near the time of the birth of her last child, when they ceased "for a while, and when the baby was around eight months old we commenced." From that testimony it conclusively appears that defendant renewed his improper relations with plaintiff's wife about eight months after the birth of her last child, which would be the 15th day of July, 1940, when the renewed relationship was commenced and continued thereafter for some time, but the exact length is not disclosed by the record. This action, as we have seen, was filed on April 15, 1941, some three months before the expiration of the one year from the date of such renewed relationship, thus demonstrating, as we conclude, that the court was in error in holding that the limitations had run and barred plaintiff's action as based on criminal conversation.

Plaintiff testified that he observed sometime after the beginning of the meetings of his wife and defendant that her conduct toward him theretofore, began to wane and she grew cross and manifested irritability toward him, whereby she was converted from an affectionate attitude toward him to one approaching detestation, clearly manifesting an attitude of coolness and aloofness toward him. When she was asked as to the effect on her affections toward her husband because of her unlawful relationship with defendant she testified in effect that she could not tell. She was asked: "You love your husband yet, don't you?" and her answer was: "Well, I can't say that I do exactly." She was asked: "Do you think as much of your husband today as you did when you married him?" and she answered, "No, I don't." Her answers to other questions propounded to her clearly indicate to our minds that defendant (at least while such unlawful intercourse was continuing) diverted the wife's affections to himself, and at least impaired, if not destroyed, her affections for her husband. She stated in her testimony that she had not engaged in such immoral conduct before her marriage to plaintiff, and there is no testimony contradicting that statement, either directly or circumstantially. Under the conditions of the testimony on that issue we think its determination should be submitted to the jury and that the court erred in determining otherwise.

Wherefore, for the reasons stated, the judgment is

reversed with directions to set it aside and for further proceedings consistent with this opinion.