# CHARLESTON.

## NEIL v. FLYNN LUMBER CO.

Submitted April 18, 1916.    Decided April 25, 1916.

1. INJURY TO SERVANT.

   For the principles of law governing this case see *Neil* v. *Flynn Lumber Company*, 71 W. Va. 708. (p. 236).

2. MASTER AND SERVANT—*Injuries to Servant—Sufficiency of Evidence.*

   There was a judgment for defendant in the circuit court upon demurrer to the evidence. The evidence calls for a reversal of the judgment. (p. 236).

Error to Circuit Court, Nicholas County.

Action by Orville Neil against the Flynn Lumber Company. Judgment for defendant, and plaintiff brings error.

*Reversed and rendered.*

*Fred O. Blue, G. G. Duff, S. R. King* and *W. G. Brown,* for plaintiff in error.

*Alderson & Breckinridge* and *McClintic, Mathews & Campbell,* for defendant in error.

Mason, Judge:

The case was before this court on a former occasion, and the legal questions arising on the declaration decided. 71 W. Va. 708. We decided in that case that where an incorporated company agrees with an employee, for a consideration therefor, to furnish a competent and skilled physician to attend and treat him in sickness or accident occurring while in its service, it is bound thereby to select and retain for that purpose a physician having the knowledge and skill ordinarily possessed by other members of his profession in the same community, and if the company fail to perform the duty so imposed, and by reason thereof the employee is injured, the company is liable in damages to the servant, to the extent that the physician himself would be, were he sued for the injury.

The case was remanded to the circuit court of Nicholas County, and a trial had. Both parties introduced testimony, and when it was all in, the defendant demurred to the evidence, and the plaintiff joined in the demurrer. The question of the amount of damages was submitted to the jury. Thereupon the jury returned a conditional verdict for the plaintiff for $3,000.00.

The court sustained the demurrer to the evidence and dismissed the suit, and entered judgment against the plaintiff in favor of the defendant for costs. The evidence is regularly certified by bill of exceptions; and writ of error was allowed to this court.

There are four things which the plaintiff must prove to entitle him to a judgment, namely:

First; That he was in the employ of the defendant at the time he was injured. The evidence is quite clear that he was employed by the defendant, and was at work for the defendant at the time of the accident.

Second; That by the contract of employment the defendant agreed for a consideration, to furnish the plaintiff a com-

petent physician to attend and to treat him for any sickness or accident occurring while in its service. The testimony shows that such was the contract, and that a certain sum was deducted from plaintiff's wages every month to pay for medical services. The evidence is somewhat confusing, by reason of the fact that the defendant did not have him enrolled by name. The account was carried in the name of the "Neil team," which included the horse and driver, and the plaintiff was the driver. The defendant recognized its duty to furnish a physician for the plaintiff by doing so.

Third; The plaintiff must prove not only that he was injured while in the defendant's services, and that he needed the care and attention of a physician, but also that it was the duty of the company to furnish him a competent physician.

Did the defendant furnish a competent physician to attend the plaintiff? Upon this subject the evidence is somewhat contradictory. The defendant was notified of the injury to the plaintiff, and sent Dr. Dunbar at plaintiff's request to attend him. Plaintiff's leg was broken. Dr. Dunbar reduced the fracture, and it is conceded that Dr. Dunbar was a competent and skilled physician. Dr. Dunbar says in his testimony that he was sent by the defendant to attend the plaintiff, and to do what was necessary to be done. From this evidence the jury may well have interpreted this arrangement to have been that Dr. Dunbar would set the leg, and then have Dr. Cline take charge of the case, and that this was an arrangement made by the defendant and the two doctors. This would make the employment by the defendant, and not the act of Dr. Dunbar. When Dr. Dunbar arrived at Neil's, he found Dr. Cline at the house. Dr. Dunbar took charge of the patient, and properly set the bone and dressed the wound, and then left him in care of Dr. Cline. The evidence shows that Dr. Cline was a young man studying medicine, still attending medical college, and was not a legally qualified practicing physician. He was an assistant to Dr. Brown, the regularly employed physician of the company at the time. The defendant's agents and managers knew this, and paid him for his services as such assistant during the time he was attending the plaintiff. There is enough evidence in the case

from which it may safely be inferred that Dr. Cline was not sufficiently skilled to treat the case. The defendant knew that Dr. Cline had control of the case.

Eleven days after the fractured leg had been properly set by Dr. Dunbar, but before the bones had united, Dr. Cline in the course of his treatment raised or moved the leg from the box in which it had been placed by Dr. Dunbar, and placed it in a plaster cast. There is no dispute about the fact that the leg was properly set, and was doing well until Dr. Cline changed it from the box and placed it in the plaster cast. The plaintiff testified that he felt the parts give when Cline moved the leg; and witnesses who were present at the time testified that Cline said he believed it moved; and another witness said he said, ''I'll be damned if I didn't see that leg give,'' and plaintiff said, ''I know it did, I felt it.'' Two physicians testified that the leg should not have been removed from the box for from four to six weeks; and the physicians all say that if the bone was re-broken, it should have been re-set. This evidence is not contradicted. It is well proven and not contradicted that Dr. Cline was without experience in the treatment of such cases, and certainly the evidence was sufficient under the law governing demurrers to evidence, to justify a finding for the plaintiff. ''By demurring to the evidence, the demurrant admits, in favor of the demuree, all inferences of fact that may be fairly deduced from the evidence.'' *Vance* v. *Railway Co.*, 53 W. Va. 338. It may be said that without any other evidence, the conduct of Dr. Cline in the treatment of this case shows clearly that he was incompetent.

Fourth; The plaintiff must prove damages. It is scarcely necessary to say that the plaintiff was very seriously injured by the treatment of the leg. By permitting the parts of the bone to lap over and shorten the leg, the plaintiff was made a cripple for life.

Plaintiff was injured on the 12th day of August, 1907, and was treated by Dr. Dunbar on the same day. This suit was not begun until August 15, 1908, more than one year later. Suits of this character must be commenced within one year from the time the right of action accrues. Hence the defend-

ant claims that the right of action was barred by limitation. But the injury complained of and to which the evidence was directed, occurred August 23, 1908, when Dr. Cline removed the leg from the box, as above stated. This was less than a year.

It is also claimed by the defendant that the damages assessed by the jury are excessive. The plaintiff was twenty-one years of age. He is permanently disabled, was sick a long time, and the evidence shows did not recover his strength or ability to work. We can not say that the verdict of the jury was excessive.

We are of opinion that the judgment of the circuit court sustaining the demurrer to the evidence and rendering judgment for the defendant is erroneous and should be reversed, and judgment should be rendered here for the plaintiff for the amount of the verdict of the jury, and costs.

*Reversed and rendered.*