# CHARLESTON.

Anna L. Burner *v.* Smith Coal Company *et al.*

(No. 6353)

Submitted March 12, 1929.    Decided March 19, 1929.

*John F. Brown,* for plaintiffs in error.

*D. H. Hill Arnold* and *H. B. Dardens,* for defendants in error.

Woods, President:

This action of trespass on the case was brought to April Rules, 1927. The declaration charges that Smith Coal Company, a corporation, Lawrence J. Smith and Clarke Colerider, after April, 1922, "unlawfully, knowingly and wilfully en-

tered upon and under the surface of certain lands belonging to the plaintiff and did dig, mine and remove a large amount of coal from under plaintiff's land", whereby the latter was damaged to the amount of $3,000.00. In addition to the plea of not guilty, a special plea of the statute of limitations was interposed, the claim being advanced that the coal was removed in 1921, more than five years prior to the institution of the action, rather than in the latter part of 1922, as contended for by the plaintiff. The first two of the above named defendants prosecute this writ from a judgment entered against them. They allege that the circuit court erred (1) in refusing to set aside the verdict as being contrary to the law and the evidence, and (2) in the giving and refusing of certain instructions.

The plaintiff was owner of the property in 1921 and 1922, and the Smith Coal Company was engaged in the business of mining coal on an adjoining tract from 1917 to 1923, though they closed down on September 1, 1921, and did not resume operations until sometime in July, 1922. At the latter date Pearl Snyder and C. O. Phillips commenced work for Smith Coal Company under a contract of May 15, 1922, whereby they were to receive a stipulated price per ton for all coal mined by them. Clarke Colerider ceased to be a stockholder of the corporation on May 16, 1922. To show that the trespass occurred in 1922, the plaintiff introduced Pearl Snyder as a witness. In addition to producing the contract of 1922, Snyder stated that for a period of from four to seven days in August, 1922, that he and Phillips had one man working in the heading, and another in the air course (the location of the admitted encroachments); that he told Smith "I believe we are across the line on Burner's coal", and that Smith replied, "It don't make any difference"; that they were stopped by Mr. Colerider. C. O. Phillips testifies that he "heard Mr. Snyder tell Mr. Smith that", and that Smith replied, "Go ahead", or something like that. He states that it was his understanding that Snyder and Smith were talking about "the Burner line". There is testimony that from 212 to 336 tons of coal were removed by the Smith Coal Company from under the lands of the plaintiff. And in a letter to

Snyder and Phillips, dated November 25, 1922, Smith, in suggesting a reduction of twenty-five cents in the loading price for the month of November, states: "Previous to October 1st, we were getting four dollars per ton and better for our coal at which time we paid you the maximum on the contract, i. e. $1.75 per ton." There is other testimony that the average market price was better than four dollars per ton during the months of July and August.

Several witnesses, who had had connection with and had worked in the mine in 1921, testified on behalf of defendants to the effect that the heading and the air course were driven to their present extent prior to September 1, 1921, and Smith states that no work was done in that part of the mine after the last mentioned date. Smith denies that statement attributed to him by Snyder and Phillips, "It don't make any difference". He likewise denies any knowledge of the trespasses until after Rhodes had completed his map for the Smith Coal Company, which bears date July 29, 1922. A blue print of this map, as the same now appears with the several extensions, made during the following year, platted thereon, was introduced for the purpose of corroborating Rhodes' testimony that the excavations in the heading and the air course had been made prior to his survey, which survey was made during the period that the mine was closed down. The original map, while not introduced in the lower court, was filed in this Court by agreement. Defendants seek to make much of the fact that the Rhodes map, as it now stands shows the same encroachments as that shown by the plat made by Tillson for plaintiff shortly after her discovery in 1924 that encroachments had been made. They state that the two maps are practically conclusive, when taken with the other evidence, that the trespass did occur prior to the time when Snyder went to work in the mines in the latter part of July, 1922. The fact that the Rhodes map shows the encroachments as they exist today, is not proof that it showed them in July, 1922—the time the principal part of the map was made. The evidence of the plaintiff is that Snyder and Phillips had begun mining and that they had to stop to permit the survey of Rhodes to be made; that

a few days after the survey was made Colerider showed them the Burner line and stopped them from working. In view of the conflict in the testimony it was for the jury to say whether or not the representations thereon are correct in fact. The testimony is in conflict in regard to many other matters of fact.

After all the evidence was in, the defendant submitted an interrogatory to the jury: "If the jury believe by a preponderance of the evidence that defendants trespassed by mining any coal on plaintiff's land within five years of the institution of this suit on the 2nd day of April, 1927, was said trespass a wilful or an innocent one?" And the jury, by their verdict answered: "We the jury, find for the plaintiff, Anna L. Burner, the sum of $1,299.38, principal and interest, for amount of coal wilfully taken by Lawrence J. Smith and the Smith Coal Company in the year 1922."

We are of opinion that the evidence was sufficient to support the jury's finding as to the date of the trespass, as well as the amount of coal taken, and its value at the time removed, and as to the wilfulness of the trespass. The map of Rhodes was of no greater value than the witnesses' testimony with which it was introduced. Defendant did not introduce any copies of reports made to the mining department. A verdict based on conflicting evidence ordinarily should not be set aside. *Knight* v. *Coal Co.*, 99 W. Va. 261, 265; *Charleston* v. *DeHainaut*, 95 W. Va. 202; *Deegans Coal Co.* v. *Logan Poca. Fuel Co.*, 94 W. Va. 30; *Stone* v. *Bank*, 72 W. Va. 171; *Coalmer* v. *Barrett*, 61 W. Va. 237; *Buck* v. *Newberry*, 55 W. Va. 681.

Objection is made to plaintiff's instruction No. 1, which tells the jury that the suit was not barred if brought within five years of the time when "plaintiff knew or had reasonable grounds to know of said encroachments", etc., on the ground that the quoted words are ambiguous, misleading, and that they do not quote the law of the State correctly, citing *Petrelli* v. *W. Va.-Pittsburgh Coal Co.*, 86 W. Va. 607. That case, in point four, syllabus, states that the statute of limitations begins to run only from the time of actual discovery of the trespass, "or the time when the discovery was reason-

ably possible.'' But the defendant submitted to the jury a special interrogatory, and the jury in answer thereto found that the trespass occurred in 1922, within five years of the commencement of the suit in question. The principle sought to be invoked in the instruction therefore had no application in view of the finding. ''A verdict will not be set aside because of an erroneous instruction, where the jury, in answer to special interrogatories, has made finding of fact which show the instruction, if considered, was harmless.'' *Wills* v. *Gas Coal Company,* 104 W. Va. 12; *Bennett* v. *Dayton,* 102 W. Va. 197; *Wiggin* v. *Dillon,* 66 W. Va. 313. For a like reason, the defendants cannot complain of the refusal of their instruction No. 10, which they contend correctly states the proposition alleged to have been mis-stated in the plaintiff's instruction. Nor can they complain of the refusal of instruction No. 8, which tells the jury that the defendants cannot be held liable if the trespass was committed more than five years prior to the bringing of the present action. In addition to the refusal of defendants' instructions Nos. 8 and 10, the refusal of Nos. 1, 4 and 9 are complained of. No. 1 is a peremptory instruction, and was properly refused. No. 4, which sought to define the word ''inadvertence'', was sufficiently covered by No. 3. *Knight* v. *Coal Co., supra.* Instruction No. 9, after informing the jury of the plaintiff's rights under section 8, Chapter 79, Code, to enter the defendants' mine for the purpose of ascertaining whether or not coal had been mined within five feet of her line, further instructs them that, ''if the plaintiff had elected to take this advantage of her legal rights, she should have discovered the mining of coal, if any, on her property by the defendants, within two months after the same had occurred.'' The latter statement is not in keeping with the object of the statute, which is to protect and not to penalize the land owner. Even if proper, the defendants could not have been hurt by the refusal of this instruction under the findings.

In view of the whole record, we are of opinion that the judgment of the lower court should not be disturbed.

*Affirmed.*