ADA MAE MORGAN *et al.*

*v.*

GRACE HOSPITAL, *Inc. et al.*

(No. 12386)

Submitted May 11, 1965.       Decided June 29, 1965.

HAYMOND and BERRY, Judges, dissenting.

*W. H. Ballard,* II, *C. Thomas Seay,* for appellants.

*Crockett, Tutwiler & Crockett, Charles A. Tutwiler, Barley & Goode,* for appellees.

CALHOUN, JUDGE:

This case involves a medical malpractice action instituted in the Circuit Court of McDowell County on March 10, 1964,

by Ada Mae Morgan and Thomas V. Morgan, wife and husband, against Grace Hospital, Inc., a private hospital corporation, and Ray E. Burger. The case involves the question whether the cause of action is barred by the provisions of the applicable statute of limitations.

The complaint charges that on January 16, 1953, Dr. S. Douglas Murray, a physician and surgeon who was then employed as such by the defendants, performed a hysterectomy upon Ada Mae Morgan; that she remained in the hospital thereafter until she was discharged on January 23, 1953; that she returned to the hospital and was examined by Dr. S. Douglas Murray on February 14, 1953; that following the operation, both before and after her discharge from the hospital, she suffered severe pain, nervousness and mental anguish as a consequence of negligence in the performance of the operation; that on April 13, 1963, a physician not connected with the defendant hospital discovered by means of an X-ray examination a foreign object in Ada Mae Morgan's abdomen, as a consequence of which discovery she was admitted to Bluefield Sanitarium at Bluefield for the purpose of submitting to an operation for the removal of the foreign object from her abdomen; that on May 3, 1963, the operation was performed by a surgeon at Bluefield Sanitarium; that the operation resulted in the discovery of a sponge in and its removal from her abdomen; that the sponge had been left in her abdomen as a result of the negligence of the defendants, acting through their employee, Dr. S. Douglas Murray, and their other employees, servants and agents in connection with the performance of the initial operation on January 16, 1953; and that Dr. S. Douglas Murray was a nonresident of this state when the civil action was instituted.

Ada Mae Morgan sues for personal injuries, pain, suffering and mental anguish. Her husband, Thomas V. Morgan, sues for recovery of medical and hospital bills and also damages for loss of services and loss of consortium.

The defendants filed a plea of the statute of limitations pursuant to Rule 12 (b) of the Rules of Civil Procedure asserting "that the several supposed causes of action in said

complaint mentioned, and if any such there were or still are, did not, nor did any or either of them, accrue to the said plaintiffs, or either of them, at any time within one year before the commencement of this action * * *." By an order entered on May 2, 1964, the trial court sustained the plea of the statute of limitations, entered judgment for the defendants and dismissed the action on its merits at the costs of the plaintiffs. From that judgment, the plaintiffs have appealed to this Court.

At the time the hysterectomy was performed, the period of limitation applicable to an action such as this was one year, but it has since been changed to two years. The applicable statute (Code, 1931, 55-2-12, as amended,) required an action of this character to be brought "within one year next after the right to bring the same shall have accrued * * *." Two prior decisions of this Court furnished an exact and proper basis for the trial court's ruling that the cause of action was barred at the time the civil action was instituted. It will be noted that the civil action in this case was instituted more than ten years after the date of the performance of the hysterectomy but in less than one year after the sponge was discovered in Ada Mae Morgan's abdomen by an X-ray examination.

In *Baker* v. *Hendrix,* 126 W. Va. 37, 27 S. E. 2d 275, the defendant surgeon left a sponge in the abdomen of the plaintiff following an appendectomy performed by him. Slightly more than seven years later, another physician performed an operation on the plaintiff in connection with which he discovered and removed the sponge left by the defendant in the plaintiff's abdomen in connection with the previous operation. The case was certified to this Court on the sufficiency of a replication to a plea of the statute of limitations. The Court held, pursuant to the allegations of the replication, that the one-year period of limitation is suspended in such a case "during such time as the defendant by fraud or other indirect ways or means obstructs the prosecution of plaintiff's right of action." The Court also held that mere silence on part of the guilty party in such a case will not prevent the running of the statute. *Gray*

*v. Wright,* 142 W. Va. 490, 96 S. E. 2d 671, involved an allegation that the defendant surgeon negligently failed to remove a hemostat from the plaintiff's abdomen in connection with a gall bladder operation performed by him. The Court held that the cause of action, if any, against the surgeon accrued at the time of the operation and that "in the absence of actual knowledge, fraud, or concealment on the part of the defendant," the running of the statute of limitation would not be delayed or tolled.

The complaint in the present case does not allege that defendants, through their employees, servants or agents, had actual knowledge of the fact that the sponge was left in the plaintiff's abdomen or that they were guilty of actual fraud or concealment of any facts within their knowledge. It follows that the present case was not brought within the rule of the two prior cases which would prevent the running of the applicable statute of limitations. The appeal was granted in this case by a divided Court in order to permit a reexamination of the principles announced in the *Baker* case and in the *Gray* case, in the light of other decisions of this Court in similar or analagous situations.

The application of statutes of limitations has been considered by appellate courts in innumerable medical malpractice cases. This has resulted in various exceptions to or qualifications of the rule that the period of limitation commences to run from the date of the act of malpractice rather than from the date of its discovery. Some of these rules may be stated as follows: (1) The statute does not commence to run so long as the physician's treatment of the patient continues; (2) the statute commences to run at the time of the commission of the tort or at the time of the injury, these terms being sometimes used interchangeably; (3) the statute commences to run from the date of the patient's injury rather than from the date of the commission of the tort; (4) the statute does not commence to run until the termination of the physician's treatment of the patient, except where the patient, prior to such termination discovers, or by the exercise of reasonable diligence could have discovered, his injury; (5) the statute will not run so long

as the physician fraudulently conceals the cause of action, unless the patient in the meantime discovers, or by the exercise of reasonable care should have discovered, the injury, but the cases differ as to what constitutes a fraudulent concealment; and (6) the period of limitation commences to run only from the time the patient discovers, or in the exercise of reasonable care should have discovered, the wrong committed by the surgeon. Exhaustive annotations, pointing out the variety of legal principles applied in such cases, are found in 80 A. L. R. 2d 368; 144 A. L. R. 209; and 74 A. L. R. 1317. To the same effect see 41 Am. Jur., Physicians and Surgeons, Section 123, page 233; 54 C. J. S., Limitations of Actions, Section 174b, pages 142-144; 70 C. J. S., Physicians and Surgeons, Section 60, pages 983-985. It has been said that the rule that the period of limitation commences to run from the date of the tort or wrong is subject to various exceptions and, therefore, it cannot be said to represent the general rule. *Billings* v. *Sisters of Mercy of Idaho,* 86 Idaho 485, 389 P. 2d 224.

By the *Baker* case and the *Gray* case this Court is apparently committed to the rule that, in cases such as this, the statute commences to run from the date the surgeon negligently failed to remove the foreign object from the abdomen of the patient, in the absence of proof, by a preponderance of the evidence, of actual knowledge, fraud or concealment on the part of the surgeon; and that the rule must be applied even though the patient did not know and had no reasonable means of knowing of the wrong until after the expiration of the period of limitation. We believe that the Court in this respect is committed to a rule which is unrealistic and cruelly harsh and a rule which places a burden upon the wronged plaintiff which he or she would rarely, if ever, be able to carry. Furthermore, we believe the Court in this respect is out of harmony with a more reasonable rule first applied by the Court in a strikingly analogous situation in 1920, long before the *Baker* and *Gray* cases were decided.

*Petrelli et al.* v. *West Virginia-Pittsburgh Coal Co.,* 86 W. Va. 607, 104 S. E. 103, involved an action to recover

damages for the wrongful removal of coal by the defendant by extending its subterranean mining operations into adjoining property belonging to the plaintiff. The fourth point of the syllabus in that case is as follows: "Where a cause of action accrues for the unlawful removal of coal by wrongfully extending mining operations into adjoining property, the statute of limitations begins to run only from the time of actual discovery of the trespass, or the time when discovery was reasonably possible." It will be noted that the Court stated the rule in that syllabus point without any reference to knowledge, fraud or fraudulent concealment on part of the defendant. The same principle was reiterated and applied in *Knight et al.* v. *Chesapeake Coal Co.,* 99 W. Va. 261, 128 S. E. 318, the first point of the syllabus being as follows: "In an action to recover the penalty imposed by section 7, c. 79, Code 1923, for mining within five feet of a division line, under a plea of the statute of limitations, the burden rests upon the defendant to establish by a preponderance of the evidence: (1) that the encroachment was made more than a year before the institution of the suit; and (2) that the plaintiff knew of the encroachment, or that discovery thereof could have been made by the use of reasonable diligence, more than one year prior to the bringing of the action." The *Petrelli* case was cited, apparently with approval, in *Burner* v. *Smith Coal Co. et al.,* 107 W. Va. 158, 161, 147 S. E. 545, 546, and in *State ex rel. Ashworth* v. *The State Road Commission et al.,* 147 W. Va. 430, 439, 128 S. E. 2d 471, 477.

It appears, therefore, that the Court is committed to two variant rules in the application of the statute of limitations in two analogous and strikingly similar types of cases. In cases involving the negligence of surgeons in leaving foreign objects in the abdomens of patients, the rule is that the period of limitation will run against the patient's cause of action from the date of the operation unless the patient can prove by a preponderance of evidence that the surgeon knowingly and fraudulently concealed the wrong from the patient. In the cases involving wrongful or negligent subterranean mining by a defendant of a plaintiff's coal, the period of limitation does not run from the date of

the wrong or tort, but rather from the date the plaintiff learned, or by exercise of reasonable care should have learned, of the wrong committed against him by the defendant. As one member of this Court has commented in relation to these variant applications of the statute of limitations, it is difficult to conceive why, in right, reason or justice, one rule should apply when a defendant's wrong is concealed in the bowels of the earth and another, harsher rule should apply when the wrong has been concealed by the defendant surgeon in the bowels of a human being. It is difficult to conceive why limitations should be applied with such strictness and harshness in case of an injury to the person of a human being and yet applied with much less strictness and with far greater indulgence and reason when the wrong has been done to the plaintiff's coal and incidentally to his pocketbook. We believe that the two rules cannot, in reason and justice, be permitted to coexist in two situations of such similar and analogous nature.

In support of the contention that we should continue to adhere to the rule applied in the malpractice cases, it is urged that the construction of a statute by a court of last resort becomes a component part of the statute. *Scott v. Rinehart & Dennis Co. et al.*, 116 W. Va. 319, pt. 2 syl., 180 S. E. 276; *State ex rel. Zirk v. Muntzing*, 146 W. Va. 349, pt. 2 syl., 120 S. E. 2d 260. We believe there are in this case several sound answers to that contention. First, how can that legal principle be applied in a situation of two divergent constructions of the same statute by the same court? Can it be said that both constructions have become component parts of the statute? In the second place, the rule announced in the *Petrelli* case relating to wrongful mining operations had been "a component part of the statute" for almost a quarter of a century, without any change therein by the legislature, before the Court first announced the variant rule in the *Baker* case in relation to a foreign object left by a surgeon in the abdomen of a patient. During all the period of the coexistence of the two rules, the legislature has not changed either rule. If there is any fair inference to be drawn from the inactivity of the legislature during that period, perhaps it should be that the legis-

lature has left it to this Court to reconcile its apparently variant, inconsistent or illogical holdings in this area.

It is contended in behalf of the defendant that we cannot change the rule announced in the two medical malpractice cases previously referred to in this opinion without invading the province of the legislature. We consider this contention wholly untenable. We readily and willingly recognize that this Court cannot change the limitation period from one year, as it was at the time the alleged tort was committed in this case, or from two years, as it is at present. We are merely called upon to construe the statute as it was enacted by the legislature and that function is one peculiarly for the judicial branch of government.

The statute does not expressly provide that the period of limitation shall commence to run from the time the tort or wrong is committed; nor does the statute expressly provide that the period of limitation shall commence to run from the time the wronged plaintiff discovers, or, in an exercise of reasonable care, should have discovered that the tort or wrong has been committed by the defendant with a consequent damage to the plaintiff's property. Those rules are not found in the express language of the statute but, on the contrary, they are products of this Court's construction of the statute. We are merely called upon in this case to construe the phrase, "within one year [now two years] next after the right to bring the same shall have accrued * * *." That is exactly what the Court did in the two coal mining cases and in the two medical malpractice cases. It cannot be said that the Court changed the statute in any of the four cases, unless it be said that the holding of the *Petrelli* case had become "a component part of the statute" and that the Court, therefore, changed the statute in the subsequent case of *Baker* v. *Hendrix, supra*.

Our task in the present case is not merely to construe the statute as the Court did in the four cases to which we have referred previously; but we have in the present case that which we conceive to be the additional task of reconciling, if possible, the two divergent rules of construction applied to the statute. We simply feel that the two rules

of construction applied by the same court to the same statute are divergent and inconsistent, leaving needless uncertainty in judicial construction; and that one or the other of the two divergent constructions should now be adopted and the other abandoned in order to bring about consistency in this respect in the decisions of this Court.

We believe that we recognize fully the significance of the doctrine of *stare decisis* and that we are disposed to apply it reasonably. We do not believe, however, that a judicial construction of a statute by this Court, whether sound or unsound, becomes immutable and beyond the power of the Court subsequently to reconsider its soundness. An overruling of *Baker* v. *Hendrix, supra,* and *Gray* v. *Wright, supra,* cannot unsettle property rights. It is doubtful that such an overruling would affect any cause of action existing in this state at this time other than that involved in the present case. On the other hand, it is conceivable that property rights might become unsettled if we were to overrule the *Petrelli* case and the *Knight* case. We earnestly believe that the bench and bar will be well served by the Court if we diligently endeavor at all times to accomplish consistency and certainty in our decisions, rather than laboriously to endeavor to distinguish decisions in such a way as needlessly to create uncertainty where none need exist.

The basic purpose of statutes of limitations is to encourage promptness in instituting actions; to suppress stale demands or fraudulent claims; and to avoid inconvenience which may result from delay in asserting rights or claims when it is practicable to assert them. 53 C. J. S., Limitations of Actions, Section 1b, page 901; 34 Am. Jur., Limitation of Actions, Sections 9 and 10, pages 18-20; 12 M. J., Limitation of Actions, Section 2, page 180. The rule announced by the Court in the coal mining cases comports with these underlying purposes of such statutes more than the rule announced later in relation to medical malpractice cases. It would be unwarranted to assert that the plaintiff in this case has slept on her rights; that she is asserting a stale or fraudulent demand; or that she has needlessly delayed the institution of this action or displayed lack of diligence

in asserting her claim with reasonable promptness after it was practicable for her to do so. Can it be said that any attorney would or could have advised her to sue within a year after the hysterectomy was performed? Can anybody reasonably assert that she was guilty of lack of diligence when the evidence of the alleged wrong or tort committed by the surgeon was effectively sealed and hidden from view by the sutures which he applied? Must she be penalized and denied a day in court and must the defendants and their employees be rendered immune from any redress of the wrong inflicted upon the plaintiff merely because apparently the wrong or tort could be discovered only by means of an X-ray or by a second incision in her abdomen? Doubtless it is fair and accurate to say that neither the operating surgeon nor anybody else knew of the presence of the sponge in the plaintiff's abdomen until another physician discovered it years later by means of an X-ray examination. It simply places an undue strain upon common sense, reality, logic and simple justice to say that a cause of action had "accrued" to the plaintiff until the X-ray examination disclosed a foreign object within her abdomen and until she had reasonable basis for believing or reasonable means of ascertaining that the foreign object was within her abdomen as a consequence of the negligent performance of the hysterectomy.

A rule which has been applied by various courts to cases such as the present case, and which has been referred to as the "discovery rule," was stated in the syllabus by the court in *Spath* v. *Morrow*, 174 Neb. 38, 115 N. W. 2d 581, as follows: "A cause of action for malpractice based upon the alleged failure of a physician to remove a foreign object left in the body of a patient by mistake does not accrue until the patient discovers, or in the exercise of reasonable diligence should have discovered, the presence of the foreign object." The rule was stated in similar language in the first point of the syllabus of *Ayers* v. *Morgan*, 397 Pa. 282, 154 A. 2d 788, as follows: "Where a surgeon negligently leaves a sponge in the body of his patient resulting in harm to the patient, the statute of limitations on the patient's cause of action does not begin to run until the patient

learns, or by the exercise of reasonable diligence could have learned, of the presence of the sponge within his body." In the opinion in *Billings* v. *Sisters of Mercy of Idaho,* 86 Idaho 485, 389 P. 2d 224, at page 232 the Court stated: "In reality, the 'general rule' has little to recommend it. It is neither the position of a majority of the jurisdictions nor is it firmly based on considerations of reason or justice. We will, therefore, adhere to the following rule: where a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of such foreign object in his body." "Where a foreign object or substance is negligently left in a patient's body by an operating physician and surgeon, and the patient is in ignorance of the fact, the limitation period does not begin to run against a malpractice action until the patient learns, or in the exercise of reasonable care and diligence, should have learned of the presence of such foreign substance in his body." *Seitz* v. *Jones,* (Okl.) pt. 2 syl., 370 P. 2d 300. To the same effect see *Fernandi* v. *Strully et al.,* 35 N. J. 434, 173 A. 2d 277; *Johnson* v. *Caldwell,* 371 Mich. 368, 123 N. W. 2d 785; *Hemingway* v. *Waxler et al.,* (Cal.), 274 P. 2d 699; *Stafford* v. *Shultz et al.,* 42 Cal. 2d 767, 270 P. 2d 1; *Wohlgemuth* v. *Meyer,* 139 Cal. App. 2d 326, 293 P. 2d 816; *City of Miami* v. *Brooks,* (Fla.) 70 So. 2d 306; *Perrin* v. *Rodriquez et al.,* (La.) 153 So. 555; *Davis et al* v. *Bonebrake,* (Colo.) 313 P. 2d 982; *Burton* v. *Tribble,* 189 Ark. 58, 70 S. W. 2d 503; *Morrison* v. *Acton,* 68 Ariz. 27, 198 P. 2d 590; *Rosane* v. *Senger,* 112 Colo. 363, 149 P. 2d 372.

We believe that the "discovery rule" as stated and applied in cases cited above represents a distinct and marked trend in recent decisions of appellate courts throughout the nation and that it is in harmony with the rule announced by this Court in the decisions involving subterranean coal mining operations. We are of the opinion that this rule should be applied in this case. By this decision we merely apply the rule of *Petrelli* v. *West Virginia-Pittsburgh Coal Co.,* 86 W.

Va. 607, 104 S. E. 103 and *Knight* v. *Chesapeake Coal Co.,* 99 W. Va. 261, 128 S. E. 318, to the analogous situation presented in this case. We merely extend the rule so that it will apply to an action in which a plaintiff alleges that a foreign object was negligently left in his or her body following a surgical operation. To the extent that *Baker* v. *Hendrix,* 126 W. Va. 37, 27 S. E. 2d 275 and *Gray* v. *Wright,* 142 W. Va. 490, 96 S. E. 2d 671, are inconsistent with the decision in this case, they are hereby disapproved.

For reasons stated in this opinion, the judgment of the Circuit Court of McDowell County is reversed and the case is remanded to that court for such further proceedings, consonant with this opinion, as may be proper.

*Reversed and remanded.*

HAYMOND, JUDGE, dissenting:

As in my considered judgment the decision of the majority of the Court in this case is clearly erroneous in that it misconstrues the applicable statute of limitations, practically defeats its purpose to put an end to litigation within a definite period of time by removing that limit at the instance of a plaintiff who manifestly failed to act with any proper degree of due diligence, invades the province of the Legislature, utterly fails to consider or recognize the valid distinction between underground encroachment cases and malpractice cases, and manifests little or no regard for the application of the salutary doctrine of *stare decisis,* I emphatically disagree with the conclusion reached by the majority and express my dissent.

The undisputed facts disclosed by the record are that the surgical operation, to which the plaintiff submitted and before the completion of which the sponge was allowed to remain in the area of the operation, was performed in a hospital in Welch on January 16, 1953; that since the operation, both before and after the plaintiff was discharged from the hospital on January 23, 1953, according to the majority opinion "she suffered *severe pain,* nervousness and mental anguish as a consequence of the alleged negligence in the performance of the operation"; and that despite the

severe pain in the area of the operation during a period of more than ten years, or until April 13, 1963, she did nothing to discover the cause of the pain which was undoubtedly due to the presence of the sponge and consulted no physician concerning it until April 13, 1963, when the presence of a foreign object was discovered in the examination of an x-ray by a physician. After the examination she submitted to an operation on May 3, 1963, and at that time, which was more than ten years and three months after the sponge was left in the area of the first operation, it was discovered and removed. During all this time there is no showing that the doctor who performed the first operation did anything to mislead the plaintiff or engaged in any fraudulent conduct or acted in any way to prevent or interfere with any investigation concerning the presence of the sponge or to obstruct, delay or retard the institution of this or any action to recover for the alleged injury of the plaintiff.

For more than a decade after the injury was inflicted and the cause of action had accrued the plaintiff had absolute control over the condition of the affected area of her body and was at all times free to obtain treatment for her pain or to consult a doctor to ascertain its cause; and if she had done either she should and would have discovered the presence of the sponge long before the end of the two year, then one year, limitation period. When the plaintiff belatedly decided to investigate and inquire into her physical condition the presence of the sponge was readily detected. After an unwarranted delay of approximately ten years during which the pain she admits she suffered necessarily put her on notice of the existence of an abdominal ailment, upon consultation with another physician, the location of the trouble producing sponge was quickly discovered. As a result of the unreasonable delay of the plaintiff in discovering the presence of the sponge and in instituting this action the doctor who performed the operation and who presumably knows more about plaintiff's injury than any other person has long since removed from this State and his testimony as a material witness is unavailable to the defendant.

The long and unreasonable delay of the plaintiff has created, in this proceeding, a situation prejudicial to the defendant which the enactment of the statute was designed to prevent, and which situation is made possible and its force is accentuated by the application of the discovery rule which has now been adopted and approved by the majority of this Court.

The action of the majority in holding that the statute of limitations does not apply under the facts of this case until the presence of the sponge was discovered by the plaintiff puts a premium upon tardiness and delay and constitutes a reward for negligent conduct upon the part of the plaintiff who could have promptly discovered, by the exercise of even a slight degree of diligence, the presence of the sponge within the one year period of limitation prescribed by the statute, Section 12, Article 2, Chapter 55, Code, 1931, as amended, which was in effect when the first operation was performed in January 1953. In fact, it is not unreasonable to believe, in view of the admitted presence of the pain of which she complains from the time of the first operation until the discovery of the sponge, that the plaintiff was guilty of contributory negligence and that a jury would so determine that issue upon a trial of the case upon its merits, although that question and any other matters involving the merits of this case are, of course not before this Court on this appeal.

There is no compelling reason for the detailed expressions of concern in the majority opinion for the position of a manifestly dilatory plaintiff by reason of the application of the general rule which is referred to as "unrealistic and cruelly harsh" particularly in view of the absence of any mention of any injustice or hardship which has resulted to the defendant under the discovery rule with respect to any defense by the defendant to the stale claim of the plaintiff caused by the unreasonable delay upon the part of the plaintiff in detecting the presence of the sponge after a tardiness of more than ten years and in finally belatedly instituting the present action.

The decision in this case, in departing from the well

established general principle that the statute of limitations runs from the commission of the wrong, at which time the cause of action accrues, and in adopting in its stead the so-called discovery rule that the cause of action does not accrue until the discovery of the wrong, emasculates the statute and demonstrates clearly the attendant intolerable result of rendering the statute inoperative until, regardless of the lapse of time, the wrong is discovered or by the exercise of reasonable diligence should have been discovered by the plaintiff. Under the discovery rule the application of the statute in any given instance will depend upon and vary with the time of the discovery of the wrong by the plaintiff and adherence to the discovery rule in personal injury actions will necessarily produce confusion and uncertainty with respect to the operation of the statute.

The principle is well established and generally recognized that statutes of limitations are statutes of repose and are designed to require the prosecution of a right of action within a reasonable time, to prevent undue delay in bringing suit on claims, and to suppress the assertion of fraudulent and stale claims to the surprise of the parties, when the evidence may have been lost, or the facts may have become obscure because of defective memory, or the witnesses may have died or disappeared and thus become unavailable at the trial of the case. The essential attribute of a statute of limitations is that it accords and limits a reasonably designated period of time within which an action may be brought on causes of action which it affects. See 12 M. J., Limitation of Actions, Section 2; 34 Am. Jur., Limitation of Actions, Section 10; 53 C. J. S., Limitations of Actions, Section 1b. A statute of limitations does not bar or affect the merits of the controversy in favor of the defendant but merely permits a litigant, if he chooses, to close the door of the court on his tardy adversary. *Merritt* v. *Cravens,* 168 Ky. 155, 181 S. W. 970, L. R. A. 1917F. 935. In the opinion in *Order of Railroad Telegraphers* v. *Railway Express Agency, Inc.,* 321 U. S. 342, 64 S. Ct. 582, 88 L. Ed. 788, the Court uses this pertinent language: "Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing sur-

prises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."

Under the applicable statute of limitations, Section 12, Article 2, Chapter 55, Code, 1931, as amended, the defendant had the right, until the present decision, not to be subjected to action based upon a stale claim and not to be subjected to liability for such claim for a longer period of time than that prescribed by the statute which in 1953 was one year from the time the cause of action accrued, subject to the exceptions provided by Section 17, Article 2, Chapter 55, Code, 1931. Those exceptions are that when any right of action shall accrue against a person who had previously resided in this State and who shall by departing from it, or by absconding or concealing himself, or by any other indirect ways or means, obstruct the prosecution of such right, or if such right has been or should hereafter be obstructed by war, insurrection or rebellion, the time that such obstruction may have continued shall not be computed as any part of the time within which such right might have been or should have been prosecuted. None of the indicated exceptions and no fraud upon the part of the defendant exists or applies in this proceeding.

The present decision by which the majority departs from and rejects the rule that the statute runs from the accrual of the cause or right of action which occurs when the wrong is committed and adopts and substitutes the so-called discovery rule for the rule previously adhered to by this Court, unjustly favors a negligent plaintiff who has utterly failed to exercise due diligence, or any diligence, to discover the wrong or the injury complained of and deprives the defendant of his right to have his liability determined without unreasonable delay. This right is a substantial right which the Legislature, in enacting the statute, intended to safeguard and protect. The inevitable result of the instant

decision is unfair discrimination between the parties in favor of the negligent plaintiff and to the prejudice of the less favored defendant. The obvious effect of the present decision in that respect should have induced the majority to adhere to the prior decisions of this Court in construing and applying the statute and should have caused it to refuse to disapprove its prior decisions in *Baker* v. *Hendrix*, 126 W. Va. 37, 27 S. E. 2d 275, and *Gray* v. *Wright*, 142 W. Va. 490, 96 S. E. 2d 671, which were carefully considered by this Court and, in my judgment, were rightly decided. The present decision should also have caused the majority to refrain from adopting the so-called discovery rule which, by affording a plaintiff the opportunity to delay unduly the discovery of the wrong, makes possible the prosecution of fabricated, fraudulent, unjust or stale claims and by lapse of time restricts and impairs the right and the ability of the defendant to present an effective or successful defense against any such claim.

Despite the statement to the contrary in the majority opinion, the present decision manifestly invades the province of the Legislature. Statutes of limitations, as other statutes, are created solely by legislative enactment and not by judicial decision. Courts have no power with respect to such legislation except to construe and apply the statute. The provision of the instant statute, in effect when the sponge was left in the plaintiff's abdomen, that every personal injury action for which no limitation is otherwise prescribed shall be brought within one year (now two years) after the right to bring the same shall have accrued, is clear and free from ambiguity and this Court has consistently held that the statute of limitations begins to run when the cause of action accrues. *State ex rel. Magun* v. *Sharp*, 143 W. Va. 594, 103 S. E. 2d 792; *G. T. Fogle and Company* v. *King*, 132 W. Va. 224, 51 S. E. 2d 776; *Barnes* v. *Lilly*, 110 W. Va. 643, 159 S. E. 873; *Cann* v. *Cann*, 40 W. Va. 138, 20 S. E. 910; *Harper* v. *Harper*, (4th Cir.), 252 Fed. 39; *City National Bank of Fairmont* v. *Fidelity Mutual Life Insurance Company*, (N. D., W. Va.), 110 F. Supp. 510; and that a cause of action for personal injury accrues when the wrong is inflicted. *State ex rel. Ashworth* v. *State Road*

*Commission,* 147 W. Va. 430, 128 S. E. 2d 471; *Gray* v. *Wright,* 142 W. Va. 490, 96 S. E. 2d 671; *Baker* v. *Hendrix,* 126 W. Va. 37, 27 S. E. 2d 275; *Scott* v. *Rinehart and Dennis Company,* 116 W. Va. 319, 180 S. E. 276; *Neil* v. *Flynn Lumber Company,* 78 W. Va. 235, 88 S. E. 1090; *Kuhn* v. *Brownfield,* 34 W. Va. 252, 12 S. E. 519, 11 L. R. A. 700; *Curry* v. *Town of Mannington,* 23 W. Va. 14; *Pickett* v. *Aglinsky,* (4th Cir.), 110 F. 2d 628. By the terms "personal injury action", as used by me in this opinion, I mean to include and refer to an action involving a claim for damages for malpractice. This Court has also correctly said that in the absence of some act of concealment by the wrongdoer the mere ignorance of the injured party of the actionable wrong will not suspend the operation of the statute.

In the *Scott* case this Court held in point 1 of the syllabus that "A cause of action under Code 1931, 55-2-12 (a statute of limitations) arises when the wrong is inflicted. * * *." In the opinion in that case this Court used this pertinent language:

"The period within which actions of this character must be brought is 'one year next after the right to bring the same shall have accrued, and not after.' Code 1931, 55-2-12. *Curry* v. *Mannington,* 23 W. Va. 14; *Kuhn* v. *Brownfield,* 34 W. Va. 252, 12 S. E. 519. This statute has come to us from the mother state, being in the Revised Code of Virginia of 1819, chapter 128, section 4, and the Virginia Codes of 1849 and 1869, chapter 149, section 11. The language of the statute has varied slightly since 1819, but not its meaning. Both the Virginia and the West Virginia courts of last resort have consistently held that the right of action accrues when the wrong is committed, and in the absence of some act of concealment by the wrongdoer, the mere ignorance of the injured party of the actionable wrong will not suspend the statute. *Collis* v. *Waddy,* (1811) 2 Munf. 511; *Rice* v. *White,* (1833) 4 Leigh 474; *Fant* v. *Fant,* (1866) 17 Gratt. 11; *Vanbibber* v. *Beirne,* 6 W. Va. 168; *Bank* v. *Spates,* 41 W. Va. 27, 32-3, 23 S. E. 681, 56 Am. St. Rep. 828; *Thompson* v. *Whitaker Co.,* 41 W. Va. 574, 23 S. E. 795; *Boyd* v. *Beebe,* 64 W. Va. 216, 220-1, 61 S. E. 304, 17 L. R. A. (N. S.)

660; *Barnes* v. *Lilly*, (1931) 110 W. Va. 643, 645, 159 S. E. 873. Accord: *Harper* v. *Harper*, 252 Fed. 39, 43-4, applying the West Virginia statute.

"This construction of like statutes was so general in the states as early as 1830, that the Supreme Court of the United States then said: 'We hardly feel at liberty to treat (it) as an open question.' *Wilcox* v. *Plummer*, 4 Peters 172, 181, 7 L. Ed. 821. In 1841, after explaining that the statute of limitations must naturally receive a strict construction in a court of law, and that the court could introduce no exception to the statute which the legislature had not authorized, the Supreme Court of Ohio said: 'The true inquiry, therefore, at law is, when did the cause of action arise, and not when did knowledge of that fact come to the plaintiff?' The opinion further said that though this construction had been sometimes questioned, the court was 'not aware that it had ever been shaken.' *Fee* v. *Fee*, 10 Ohio 469, 36 Am. Dec. 103, 106-7. This construction was still unshaken in 1904, the Supreme Court of Georgia stating it was 'one of general recognition.' *Davis* v. *Boyett*, 120 Ga. 649, 48 S. E. 185, 66 L. R. A. 258, 102 Am. St. Rep. 118, 120 (citing numerous authorities). This construction is 'yet unchanged. Wood on Limitations, (4th Ed.), sec. 276c (1); 37 C. J., subject Limitation of Actions, sec. 248; 17 R. C. L., *idem* secs. 129 and 130; R. C. L., Permanent Supplement, pp. 4345-6; Annotation (1931), 74 A. L. R. 1318, etc."

The enactment, repeal or modification of statutes of limitations is the exclusive prerogative of the Legislature, not the courts. The operation of the statute of limitations is not entirely unilateral. Such statutes impose a definite and specific time limit upon the right of the plaintiff to institute suit and also protect the defendant from loss or impairment by lapse of time of his right of defense against the claim of the plaintiff. The adoption of the discovery rule by this Court in the present decision creates a decidedly favorable advantage for the plaintiff by suspending the operation of the statute for an indeterminate period until the plaintiff discovers or should have discovered the wrongful act, even though that does not occur until the defendant has been

deprived of his defense or his defense has been weakened or impaired by reason of the lapse of time resulting from the delay of the plaintiff in the discovery of the wrong. In this instance the delay of the plaintiff has deprived the defendant of the services as a witness of the surgeon who performed the first operation whose evidence might be of benefit to the defendant upon the trial of the case. The unjust advantage afforded by the discovery rule and the resulting disadvantage to the defendant should have caused the majority to refuse to disapprove its decisions in *Baker* v. *Hendrix,* 126 W. Va. 37, 27 S. E. 2d 275; and *Gray* v. *Wright,* 142 W. Va. 490, 96 S. E. 671. Instead this Court should have affirmed and refused to depart from its holding in those and other earlier cases and should have rejected and refused to adopt the discovery rule in lieu of and as a substitute for the well established rule enunciated and approved in *Scott* v. *Rinehart and Dennis Company,* 116 W. Va. 319, 180 S. E. 276.

A well recognized legal precept is that the Legislature is presumed to know the common law and the statutes of this State and, in accordance with that presumption, the Legislature must be deemed to be cognizant of the interpretation placed upon Section 12, Article 2, Chapter 55, Code, 1931, as amended, and the manner of its application by this Court in its many cases. *State* v. *General Daniel Morgan Post No. 548, Veterans of Foreign Wars of the United States,* 144 W. Va. 137, 107 S. E. 2d 353; *State ex rel. Fox* v. *Brewster,* 140 W. Va. 235, 84 S. E. 2d 231; *Marion* v. *Chandler,* 139 W. Va. 596, 81 S. E. 2d 89; *Hall* v. *Baylous,* 109 W. Va. 1, 153 S. E. 293, 69 A. L. R. 527; *Webb* v. *Ritter,* 60 W. Va. 193, 54 S. E. 484. Though long possessed of this knowledge, the Legislature has not acted to change or abrogate the rule recognized and applied in the prior decisions of this Court that the statute begins to run when the cause of action accrues and that in personal injury actions its accrual occurs when the wrong is inflicted and not when the wrong is discovered. In the absence of amendment or modification of the statute by the Legislature it must be presumed that the interpretation placed upon the statute and the manner of its application by this Court in actions

for personal injury, as indicated in its prior decisions, comply with and give effect to the legislative purpose and intent at the time of the enactment of the statute. *State* v. *Vance,* 146 W. Va. 925, 124 S. E. 2d 252. As the enactment of the statute is within the exclusive province of the Legislature, action to establish or adopt the discovery rule in the application of the statute should be taken by the Legislature and not by the courts. In my opinion the majority should have adhered to and followed the prior decisions of this Court with respect to the application of the statute in actions for personal injury and its refusal in that behalf and its action in adopting the so-called and in my judgment unsound and equivocal discovery rule in such actions constitutes an unwarranted invasion of the province of the Legislature. For that reason alone it should have rejected the so-called discovery rule.

It is evident that the majority was prompted in large measure to approve and adopt the discovery rule by the unwarranted assumption that by reason of the decisions of this Court in the cases of *Petrelli* v. *West Virginia-Pittsburgh Coal Company,* 86 W. Va. 607, 104 S. E. 103, and *Knight* v. *Chesapeake Coal Company,* 99 W. Va. 261, 128 S. E. 318, involving underground removal of or encroachment into coal of the plaintiffs by the defendants, this Court is committed to different rules in applying the appropriate statute of limitations. This assumption is indicated by these statements in the majority opinion, the correctness of which I challenge and the effect of which I emphatically deny: "It appears, therefore, that the Court is committed to two variant rules in the application of the statute of limitations in two analogous and strikingly similar types of cases. In cases involving the negligence of surgeons in leaving foreign objects in the abdomens of patients, the rule is that the period of limitation will run against the patient's cause of action from the date of the operation unless the patient can prove by a preponderance of evidence that the surgeon knowingly and fraudulently concealed the wrong from the patient. In the cases involving wrongful or negligent subterranean mining by a defendant of a plaintiff's coal, the period of limitation does not run from the date of the

wrong or tort, but rather from the date the plaintiff learned, or by exercise of reasonable care should have learned, of the wrong committed against him by the defendant."

The rule recognized and applied in the *Petrelli* case and the *Knight* case to the statute of limitations relating to damage to property does not conflict with the rule applicable to the statute of limitations relating to actions for personal injury. On the contrary the rule applied in those cases constitutes a well recognized and clearly defined exception to the rule that the cause of action accrues, and the statute begins to run, in personal injury actions, from the time of the commission of the wrong. This exception is well defined and completely justified because of the material difference in the factual situation in the two types of wrongs. The clear distinction between a trespass to a subterranean vein of coal in and underlying land owned by the plaintiff but which is accessible only through a mine or an excavation in, upon or under land owned or exclusively controlled by the defendant and the wrongful act of failing to remove a sponge or other foreign substance from the body of the plaintiff which is within complete and unrestricted control of the plaintiff, is so clearly and readily recognizable as to render needless any further comment or comparison. In the case of trespass to the coal of a plaintiff through the mine or excavation of a defendant and under his control a plaintiff is under a distinct disadvantage in comparison with a defendant who is fully aware of the facts concerning the time and place and character of the trespass or encroachment. As the plaintiff ordinarily in such instance can not readily or without difficulty discover the time or the place of the wrong committed by the defendant, the application of the discovery rule is proper and, indeed, even necessary to prevent the bar of the statute from depriving him of the right to prosecute his cause of action until he can discover the wrong committed by the defendant who has, or should have, full knowledge of the commission of the wrong. Subterranean trespass or encroachment is generally within the exclusive knowledge of the wrongdoer and is peculiarly susceptible to concealment from the injured plaintiff and it is generally within the power of the trespasser, by failing

to disclose the trespass, to prevent the injured party from asserting his right of redress within the period prescribed by the statute of limitations.

The situation with respect to the discovery of the wrong, however, is essentially different in the ordinary case of personal injury, as to which the injured person, as a general rule, knows as much or more about the wrong and the character of the injury as the wrongdoer, and in such instance, in the absence of fraud or concealment, and no fraud is charged or appears in the case at bar, there is no possible excuse or justification for the adoption or application of the discovery rule. Of course, under the prior decisions of this Court if fraud or concealment exists upon the part of the wrongdoer the operation of the statute is tolled or suspended until the injured party discovers or by the exercise of reasonable diligence should have discovered the wrong committed by the defendant. *Gray* v. *Wright,* 142 W. Va. 490, 96 S. E. 2d 671; *Baker* v. *Hendrix,* 126 W. Va. 37, 27 S. E. 2d 275; *Cameron* v. *Cameron,* 111 W. Va. 375, 162 S. E. 173; Section 17, Article 2, Chapter 55, Code, 1931.

In the *Petrelli* case, in which the defendant unlawfully removed the coal of the plaintiff from beneath the surface of his land, the defendant was guilty of wilfully trespassing into and upon the coal of the plaintiff and of concealing such trespass from the plaintiff and for that reason the discovery rule, as an exception to the general rule, was recognized and applied, and rightly so. In the *Knight* case the defendant unlawfully encroached into the subterranean coal of the plaintiff within five feet of the dividing line between the lands of the plaintiff and the defendant, in violation of a penal statute, Section 1, Article 5, Chapter 37, Code, 1931, which subjected the wrongdoer to a penalty of $500.00 for each encroachment, and as to which the period of the statute of limitations is one year. In that case, in which I was an unsuccessful attorney for the defendant, the plaintiff was unable to discover, by the exercise of reasonable diligence, the encroachment until after the expiration of the one year period of limitation;

and for that reason the discovery rule was correctly recognized and applied by this Court.

As previously indicated, the recognition and the application by this Court of the discovery rule in the *Petrelli* case and the *Knight* case, and the application of that rule in other instances in which the plaintiff does not have an equal opportunity with the defendant to discover the wrongful act, and particularly with respect to cases involving subterranean trespasses or encroachments, are in all respects correct and proper and that rule, as a well defined exception to the recognized general rule that the statute begins to run from the commission of the wrong in personal injury actions, is a just and valid rule for the application of the statute of limitations in such situations. There is, however, no conflict between the discovery rule and the general rule and neither operates to the exclusion or rejection of the other; and the existence of each does not constitute a conflict in the rules which apply to statutes of limitations. Furthermore, the existence and the application of the discovery rule in instances in which its application is just and proper, afford no excuse or justification for the surprising action of the majority in overruling the *Baker* and the *Gray* cases and in adopting the discovery rule to' the exclusion of the general rule and in rendering it inapplicable to actions for personal injuries and in particular to actions involving malpractice upon the part of a member of the medical profession such as the case at bar. That in approximately nine States in recent years appellate courts have adopted the discovery rule, with its attendant confusion and uncertainty in connection with the operation of statutes of limitations, is likewise no justification for the decision of the majority in this case. Despite the so-called trend toward the adoption of the discovery rule the well recognized general rule is followed and adhered to in most of the States of the Union and constitutes the decided weight of authority in this country. In view of that situation it is unfortunate that the majority did not give due consideration or weight to the decisions in those jurisdictions which represent the clear weight of authority.

Another reason why the majority should have refused to adopt the discovery rule is that in many instances in which it must necessarily operate, a factual question arises with respect to the time of the discovery of the wrong and whether the plaintiff by the exercise of due diligence discovered or should have discovered the wrong. In that situation the question is a question for the jury and leads to further uncertainty concerning the time when the statute begins to run instead of a fixed and definite period from the commission of the wrong, prescribed by the general rule heretofore recognized and applied by this Court in personal injury cases. A typical case in which the discovery rule was properly applied to a subterranean trespass and which shows how uncertain the application of the discovery rule, even in a proper case, may become, is *Cole* v. *Eastern Gas and Fuel Associates*, 322 F. 2d 506. In that case the District Court determined as a matter of law that the plaintiffs knew or should have known of the trespass to their coal when they acquired the right to inspect visually the mining operations of the defendant in the seam of coal in question and rendered summary judgment in favor of the defendant. On appeal the Circuit Court of Appeals, Fourth Circuit, held that an issue of material fact arose as to whether the plaintiffs which received the right to inspect visually the mining operation of the defendant exercised due diligence or were barred by the statute of limitations from recovering for any trespass committed by the defendant in mining under the land of the plaintiffs, and that such issue should be determined by the jury, and that in that situation the defendant was not entitled to summary judgment. In consequence, the judgment was reversed and the case remanded for further proceedings to determine the disputed factual question whether the statute of limitations applied and barred the claim of the plaintiffs.

Finally, the decision of the majority, without reason or justification, affords little or no consideration to the doctrine of *stare decisis* which should operate against the disapproval or the overruling of prior decisions of the same Court unless it is clear that such prior decisions are plainly wrong and that condition clearly does not exist in this instance; and

in my judgment the utter disregard of the majority for the prior decisions of this Court with respect to the time of the accrual of the right or cause of action in personal injury actions is utterly unwarranted. Under the doctrine of *stare decisis,* a principle of law which has become settled by a series of decisions is generally binding on the courts and should be followed in all similar cases. 21 C. J. S., Courts, Section 187. See also *Lyon* v. *Grasselli Chemical Company,* 106 W. Va. 518, 146 S. E. 57. *Stare decisis* is a salutary rule entitled to great weight, and ordinarily should be strictly adhered to by the courts especially where a different ruling, as in the case at bar, will work injustice to the defendant, as it does in this case by weakening or destroying its defense against the claim of the plaintiff because of the lapse of an unreasonable period of time. In the opinion in *In re Proposal to Incorporate Town of Chesapeake,* 130 W. Va. 527, 45 S. E. 2d 113, this Court, quoting from Black's Law Dictionary, Third Edition, said: "The doctrine of *stare decisis* rests upon the principle that law by which men are governed should be fixed, definite, and known, and that, when the law is declared by court of competent jurisdiction authorized to construe it, such declaration, in absence of palpable mistake or error, is itself evidence of the law until changed by competent authority." In *Marquerite Coal Company* v. *The Meadow River Lumber Company,* 98 W. Va. 698, 127 S. E. 644, this Court held in point 2 of the syllabus that "Where a question has been decided by this Court, and parties relying on the decision, have transacted important affairs which would be seriously affected by a change of rule announced in said decision, this Court will adhere to it in subsequent cases, however it might be inclined to hold if the question were *res integra."* In *Clarke and Company* v. *Figgins,* 27 W. Va. 663, referring to the symmetry in the development of the common law and the 'doctrine of *stare decisis,* this Court said: "If a different course had been pursued, and hasty and ill-advised decisions made without regard to the precedents, the common law instead of showing symmetry in its perfection would be one incongruous mass, and no one could form any idea how a matter would be decided, as in each case the judge would

decide according to his own peculiar notion of what in that particular case might be right; and we know, that it is often true, that what one would consider right in the particular case another would regard as wrong. Nothing keeps a judge so strictly in the line of his duty, as the feeling and constant realization of the fact, that he is bound by precedents. He knows that his opinion will be by the legal profession with all its astuteness subjected to the severest criticism, and if he dares to depart on a given question from the well marked line of precedents, either his ability or integrity is in great danger of being impugned. There is too much clamor in this day to be governed less by precedents and to decide as each judge may think right in the particular case, and the reason given is, that the law as laid down by the precedents is uncertain. The only cause of this uncertainty is, that some courts in the hurry of business have rendered hasty decisions, without that consideration which ought to have been given to them, and perhaps have not cited a single authority, and then another judge or court in a great hurry has cited that case as an authority for another bad decision. It is only safe to know how the question has been settled, if settled at all, and then not depart from the rule; and if it has not been settled, to settle it after a thorough examination of the principles, upon which it must rest."

In my judgment, any unwarranted departure from the doctrine of *stare decisis,* such as I believe the majority has effected by its decision in this case, produces conflict, uncertainty and confusion in the reported decisions of this Court on the questions involved and such decisions will not be regarded with respect or as reliable authority. At best the law is a complex system of government and the proper application of its principles in the determination of the questions constantly arising in countless controversies is fraught with difficulty. For that reason the courts should strive to attain uniformity in decisions which involve the same or similar questions. This can only be achieved by careful consideration of and adherence to prior decisions in which such questions have been carefully considered and resolved by this Court as in the *Baker* and *Gray* cases.

Hasty, ill considered or conflicting decisions which pose unanswered questions and create uncertainty, doubt and confusion in a legal system, which even when graced by uniformity in the decisions of its courts, is difficult to comprehend and administer, should at all times be scrupulously avoided. See remarks by my grandfather, Alpheus F. Haymond, a judge of this Court from 1873 to 1882, upon the occasion of his resignation at a session held at Wheeling, December 16, 1882, 21 W. Va., Memoranda, pages c to f.

For the reasons stated and under the authorities cited and referred to in this dissenting opinion, I would recognize and apply the well established general rule, instead of the discovery rule, in this case, would refuse to disapprove as unnecessary to a proper decision in the case at bar the decisions of this Court in the *Baker* and *Gray* cases, and would affirm the judgment of the circuit court.

I am authorized to say that Judge Berry concurs in the views expressed in this dissenting opinion.